CHRISTINE OKALE AND BLAISE OKALE-WEEKS BY AND THROUGH HIS GUARDIAN AD LITEM, CHRISTINE OKALE, PETITIONERS v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, RESPONDENT

No. COA02-96

(Filed 15 October 2002)

**Public Assistance— emergency Medicaid coverage—state residency requirement**

    A de novo review revealed that the trial court did not err by affirming respondent Department of Health and Human Services' final agency decision to deny petitioner mother's

request for emergency Medicaid coverage for the birth of her child based on petitioner's failure to meet the state residency requirement, because: (1) petitioner mother, who was visiting the United States from Africa, expressed her intention of remaining only temporarily in the United States by entering on a tourist visa which had yet to expire when she gave birth; and (2) the unexpired tourist temporary visa created the verification to doubt petitioner's asserted intent to remain in the state.

Appeal by petitioners from judgment entered 31 August 2001 by Judge Orlando F. Hudson, Jr. in Wake County Superior Court. Heard in the Court of Appeals 18 September 2002.

*East Central Community Legal Services, by Celia Pistolis and Lila T. Forro, and North Carolina Justice and Community Development Center, by Jack Holtzman, for petitioners-appellants.*

*Attorney General Roy Cooper, by Assistant Attorney General Grady L. Balentine, Jr., for respondent-appellee.*

TYSON, Judge.

Petitioners sought judicial review of Respondent's final agency decision denying petitioners' claim for emergency Medicaid coverage on the grounds that petitioners failed to meet the state residency requirement. The trial court affirmed the final agency decision. Petitioners appeal. We affirm the decision of the trial court.

## I. Facts

On 30 January 2000, Christine Okale (Okale) entered the United States from Africa with her husband and two children under a tourist visa which was to expire on 30 July 2000. Okale admits that when she entered the United States on the tourist visa, she had no intention of just visiting. Okale was approximately three months pregnant at that time. Okale and her family subsequently came to North Carolina. On 25 June 2000, Okale gave birth to a son, Blaise Okale-Weeks (Blaise). At the time of Blaise's birth, Okale had (1) entered into a lease for an apartment in Raleigh, (2) opened a checking account, (3) enrolled her two other children in the Wake County Public School System, and (4) obtained a North Carolina identification card and a driver's license.

On 28 June 2000, Okale applied with Wake County Department of Social Services (DSS) for Medicaid to cover the costs associated with

Blaise's birth. On 3 July 2000, her application was denied on the grounds that neither she nor her son met state residency requirements. Okale appealed the decision to a local appeal hearing which upheld the denial of benefits. Okale requested a state appeal hearing before a hearing officer for respondent who issued a decision on 29 January 2001 affirming the 3 July 2000 decision. Okale further appealed to the chief hearing officer of respondent who issued a final agency decision on 23 February 2001 again affirming the 3 July 2000 decision. The evidentiary hearing audiotapes from the 23 February 2000 hearing were accidentally erased. Another hearing was held and the 3 July 2000 decision to deny emergency medicaid benefits was again upheld on 7 May 2001.

On 2 April 2001, petitioners filed a Petition for Judicial Review of the agency decision. Following a hearing, the trial court affirmed the final agency decision denying emergency medicaid to Okale and Blaise on 6 September 2001. Petitioners appeal.

## II. Issue

Petitioners contend: (1) the final agency decision was based on a rule which was not promulgated in accordance with the North Carolina Administrative Procedure Act and (2) the rule created an irrebuttable presumption which is contrary to federal and state law and regulation.

## III. Standard of Review

Under the North Carolina Administrative Procedure Act (NCAPA), an aggrieved party has the right to judicial review of a final agency decision in a contested case. N.C. Gen. Stat. § 150B-43 (2001). The standard of review depends on the issues presented for judicial review. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1991), *disc. rev. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). If the contention is that the agency's decision was a legal error, *de novo* review is used. *Id.* If the contention is that the decision was not supported by the evidence or was arbitrary or capricious the "whole record test" is used. *Id.* As petitioners contend respondent made legal errors, we review this decision *de novo*. *Id.*

## IV. MAF Manual

Respondent publishes the "North Carolina Family and Children's Medicaid Manual" ("MAF Manual"). (The MAF Manual has subsequently changed to an on-line format with changes in the section

numbers. All numbers referenced hereinafter will be to the sections as they appeared at the time petitioner sought Medicaid coverage.) The stated purpose of the MAF Manual is as follows:

> The Family and Children's Medicaid Manual describes the North Carolina Medicaid and Health Choice programs. These programs provide medical insurance coverage for qualifying citizens of North Carolina.

> The Manual describes who may be covered under North Carolina Medicaid for Families and Children or NC Health Choice. It provides requirements that a person must meet to qualify for medical coverage and the process by which coverage is determined. (There is another manual for Medicaid for the Aged, Blind and Disabled.)

> Additionally, the Manual explains the rights and responsibilities of a person requesting or receiving North Carolina Medicaid for Families and Children or NC Health Choice and provides an overview of the benefits of this medical insurance coverage.

MA-3100(I). Petitioners contend that the MAF Manual is a rule which has not been promulgated in accordance with the NCAPA.

> The NCAPA defines "rule" as:

> any agency regulation, standard, or statement of general applicability that implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by a federal agency or that describes the procedure or practice requirements of an agency. . . . The term *does not* include the following:

> . . .

> c. Nonbinding interpretative statements within the delegated authority of an agency that merely define, interpret, or explain the meaning of a statute or rule.

N.C. Gen. Stat. § 150B-2(8a) (emphasis added).

The MAF Manual is a nonbinding statement from the agency which defines, interprets, and explains the statutes and rules for Medicaid. Although the MAF Manual sets out the requirements for Medicaid eligibility, it merely explains the definitions that currently exist in the federal and state statutes, rules, and regulations. Violations of or failure to comply with the MAF Manual is of no effect but failure to meet the requirements set out in the federal and state

statutes and regulations is a ground to deny medicaid payments. The MAF Manual falls squarely within the exception to rules created in N.C. Gen. Stat. § 150B-2(8a). Respondent was not required to complete the procedural requirements for rule-making to publish the MAF Manual. This assignment of error is overruled.

### V. State Residency

The MAF Manual states "Non-immigrants may be legally admitted to the U.S., but only for a temporary or specified time. These aliens are NOT ELIGIBLE for full Medicaid or emergency medical services because they do not meet the N.C. residency requirement. Refer to MA-3230, State Residence." MA-3404(III.E.3) (emphasis in original). Petitioners contend that "[t]he MAF Manual provision mandating that a non-immigrant alien can never meet state residence requirements is contrary to federal and state law."

### A. Medicaid Regulatory Scheme

The Medicaid program, established by Congress through the Social Security Act, 42 U.S.C. §§ 1396 *et seq* (2001), is a joint federal-state program. A state that elects to participate is bound by the controlling federal statutes and regulations. North Carolina elected to participate by establishing its Medicaid program through the adoption of N.C. Gen. Stat. §§ 108A-54 through 108A-70.5. The program is governed under and administered by respondent.

An alien's status determines the extent of medicaid benefits she is eligible to obtain. If otherwise entitled to receive Medicaid, a qualified alien is entitled to full medicaid benefits. 10 NCAC 50B .0302 (July 2002). A non-qualified alien is only entitled to emergency medicaid benefits. 10 NCAC 50B .0302(c). A qualified alien is defined as:

(1) an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act,

(2) an alien who is granted asylum under section 208 of such Act,

(3) a refugee who is admitted to the United States under section 207 of such Act,

(4) an alien who is paroled in the United States under section 212(d)(5) of such Act for a period of at least 1 year,

(5) an alien whose deportation is being withheld under section 243(h) of such Act (as in effect immediately before the effective

date of section 307 of division C of Public Law 104-208) or section 241(b)(3) of such Act (as amended by section 305(a) of division C of Public Law 104-208).

(6) an alien who is granted conditional entry pursuant to section 203(a)(7) of such Act as in effect prior to April 1, 1980; or

(7) an alien who is a Cuban and Haitian entrant . . . .

8 U.S.C. 1641(b) (2001); 10 NCAC 50B .0302(b)(2). It is undisputed that Okale failed to qualify under any of these seven categories at the time she requested medicaid benefits. Any other alien is a non-qualified alien. 10 NCAC 50B .0302(c). Emergency medical services include payments for emergency labor and birth. 42 C.F.R. 435.406(b) (2001); 42 U.S.C. 1396b(v). The Code of Federal Regulations expressly states: "None of the categories allows Medicaid eligibility for non-immigrants: for example, students or visitors." 42 C.F.R. 435.408(b).

### B.  State Residency

One of the other eligibility requirements to receive medicaid benefits is state residency. North Carolina relies on the federal regulations to define who is a resident of the state. 10 NCAC 50B .0303(a). Under the federal regulations, the state of residence for an individual over the age of 21, who is not residing in an institution, is the state where the individual is "[l]iving with the intention to remain there permanently or for an indefinite period of time." 42 C.F.R. § 435.403(i)(1)(i). For an individual under the age of 21 who is not residing in an institution and is not emancipated, the residency of the child is based on the residency of the parent. 42 C.F.R. § 435.403(h)(3). Petitioners must meet the Medicaid requirements established under the state and federal Laws regardless of the stated interpretation in the MAF Manual. Because Okale was lawfully in the United States on an unexpired tourist visa at the time of the request for Medicaid payment, she was a non-qualified alien and ineligible for full medicaid payments. Okale is only entitled to emergency medicaid payments for her labor and birth if she meets the other Medicaid requirements including North Carolina residency.

Residency is defined in the federal regulation as "living in the State voluntarily with the intention of making his or her home there and not for a temporary purpose. . . . Residence may not depend upon the reason for which the individual entered the State, except insofar

as it may bear upon whether the individual is there voluntarily or for a temporary purpose." 45 C.F.R. § 233.40(a)(1)(i). "An individual visiting in the state without intent to remain shall be ineligible for Medicaid." 10 N.C.A.C. 50B .0303(c). "The client's statement shall be accepted as verification unless there is reason to doubt it." 10 N.C.A.C. 50B .0303(f).

Here, Okale expressed her intention of remaining only temporarily in the United States by entering on a tourist visa. The tourist visa had yet to expire when she gave birth. Her tourist visa declared that she intended to remain no later than 30 July 2000. While Okale stated that she intended to remain in North Carolina permanently and presented evidence of her intent to remain at the evidentiary hearings, this intent was called into doubt by her unexpired tourist visa. Her original application for a tourist visa necessarily includes her promise and understanding to leave North Carolina and America on or before the expiration date of her tourist visa. Okale's original declaration that she intends to leave the state and the country no later than 30 July 2000 is contrary to an "intention to remain there permanently or for an indefinite period of time" as required by law. 42 C.F.R. § 435.403(i)(1)(i). The unexpired tourist temporary visa creates the verification to doubt Okale's asserted intent to remain in the state. To hold otherwise, we must presume that Okale will violate the law and attempt to illegally stay beyond her latest declared date of departure from this state and country. This assignment of error is overruled.

## VI.  Conclusion

Okale failed to establish state residency. As Okale was not a resident of the state for Medicaid payment purposes, Blaise was also not a resident of North Carolina. We affirm the trial court's order affirming the final agency decision to deny Okale emergency Medicaid payments.

Affirmed.

Judges McCULLOUGH and BRYANT concur.