**D.B. v. BLUE RIDGE CTR.**

[173 N.C. App. 401 (2005)]

———————————

D.B. ON HER OWN BEHALF, AND ON BEHALF OF HER DAUGHTER, A.L., PETITIONER v. BLUE RIDGE CENTER, AND THE DIVISION OF MENTAL HEALTH, DEVELOPMENT DIS- ABILITIES AND SUBSTANCE ABUSE SERVICES, NORTH CAROLINA DEPART- MENT OF HEALTH AND HUMAN SERVICES, RESPONDENTS

No. COA04-1440

(Filed 20 September 2005)

**Administrative Law— judicial review of final agency deci- sion—specific findings required**

The superior court erred by dismissing an adoptive parent's petition for judicial review of a final agency decision concerning Medicaid services for the child and by denying all relief, and the case is vacated and remanded to the superior court with instruc- tions to remand to the agency for specific findings why the agency did not adopt the recommended decision of the ALJ, because: (1) the superior court exceeded its authority under the pre-2001 version of the Administrative Procedure Act, which is applicable in this case, when N.C.G.S. § 150B-51(a) requires a superior court to make two threshold determinations before determining whether there is substantial evidence to support an agency decision and the superior court failed to do so; (2) a threshold determination must be made by the superior court to determine whether an agency rejected an ALJ decision without stating the specific reasons for doing so, and if the agency does not provide specific reasons, the superior court is not permitted to conduct substantive review but must reverse or remand on the procedural issue; and (3) in the absence of stated reasons by the agency as to why it rejected the ALJ decision, the courts cannot reasonably determine from the record whether the petitioner's asserted grounds for challenging the substance of the agency's

final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b).

Appeal by petitioner from judgment entered 12 May 2004 by Judge E. Penn Dameron, Jr., in Buncombe County Superior Court. Heard in the Court of Appeals 17 August 2005.

*Legal Services of Southern Piedmont, by Douglas Stuart Sea; and National Health Law Program, by Sarah Somers, for petitioner appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General M. Janette Soles; and Matney & Associates, P.A., by David E. Matney, III, for respondent appellees.*

McCULLOUGH, Judge.

Petitioner (D.B.) appeals from a superior court order dismissing her petition for judicial review of a final agency decision and denying all relief. We vacate and remand.

## Facts

D.B. and her husband are the adoptive parents of A.L. At an early age A.L. was removed from the home of her biological parents by the Buncombe County Department of Social Services because she had been severely neglected and abused. A.L. was placed in the foster care of D.B. and her husband and then later, in 1999, adopted as a special needs child. Because A.L. is a special needs child, she is eligible for Medicaid coverage until she is at least 21. Since the time A.L. was adopted by D.B. and her husband, A.L.'s care has been coordinated, paid for, and provided by Blue Ridge Center (BRC).

Due to the abuse suffered by A.L. in her early childhood, she has been diagnosed with numerous medical conditions including rage disorder, borderline personality disorder, bipolar disorder and post-traumatic stress disorder. At times A.L. experienced violent rages and attempted to injure herself and others, including her family. A.L.'s physicians determined that she needs crisis intervention and stabilization services in order to help with her dangerous rages.

Before 2000, under the supervision of Dr. Kim Masters, crisis intervention and stabilization services were provided by Charter Psychiatric Hospital in Asheville, North Carolina. When this treatment was being provided to A.L., her condition gradually improved

and there was a time period in which A.L. was not required to be placed outside of the home for treatment. However, Charter closed in February 2000. Mission-St. Joseph's, the hospital located closest to A.L.'s home, does not offer services any less restrictive than full psychiatric commitment.

On several occasions after the closing of Charter, A.L. again began to have rage outbursts that escalated out of control. On two occasions, A.L. experienced severe episodes of rage, and D.B. contacted BRC's triage line to request services to stabilize A.L. On both occasions, D.B. was informed that the only crisis service available was to find a magistrate, obtain a commitment order, then call the police who would take A.L. to the local emergency room for possible involuntary commitment. D.B. did not think this course of action was appropriate and believed that it was harmful to A.L.'s overall health.

Due to repeated denials of crisis intervention and stabilization services requested by D.B. for A.L., D.B. filed a grievance with the North Carolina Department of Health and Human Services, Division of Mental Health, Developmental Disabilities and Substance Abuse Services (DMH). In her grievance, D.B. requested in-home emergency after-hours crisis service and therapeutic foster bed service. BRC denied D.B.'s request on 9 October 2000 stating,

> Blue Ridge Center's after hours emergency service is provided via telephone and on-site at Mission-St. Joseph's Emergency Room. Blue Ridge Center presently has no crisis therapeutic foster bed providers. We continually seek such providers including providers in our own therapeutic foster care program.

After receiving this denial, D.B. filed a petition for a contested case hearing in the Office of Administrative Hearings (OAH) on 6 December 2000. A hearing was held before Administrative Law Judge (ALJ) James L. Connor, II, where evidence was heard as to the denial of requested relief, medical diagnosis of A.L., prescribed treatment and framework for the provision of Medicaid services to children. The ALJ issued a recommended decision on 19 May 2003.

At the hearing before the ALJ, D.B. offered statements from a Dr. Masters, one of A.L.'s treating physicians, to show that in her opinion A.L. needed 24 hours a day and 7 days a week crisis and community based wrap-around services. Another treating physician, Dr. Patrick Lilliard, also testified as to the need for crisis intervention and stabilization services. When asked directly whether, in his clinical opinion, the provision of effective crisis intervention and stabilization services

were medically necessary for A.L., Dr. Lilliard answered that the absence of such services put A.L. at risk and that they were essential to her psychiatric care. He declined to state that the requested services were medically necessary. Dr. Munger, a non-treating physician, testified that "crisis stabilization" was a medical necessity for A.L. but that he did not believe that it was medically necessary that the initial intervention occur in A.L.'s home. The ALJ concluded that the requested crisis intervention and stabilization services had been proven by a preponderance of the evidence to be medically necessary. In the ALJ's recommended decision, he recommended that the denial for the requested services be reversed and that BRC and DMH

> provide to A.L. 24 hour per day, 7 day per week crisis intervention and stabilization services in a form consistent with the direction of her treating physicians. This need not include having a therapeutic foster bed always empty and available for A.L., but should include a sufficient number of such beds, given the population who need them, so as to make such beds usually available when needed. To the extent A.L. is living at home with D.[B.], these services should also include the 24/7 availability of a properly trained person to come to A.L.'s home during severe crises for therapeutically appropriate interventions.

DMH and BRC filed exceptions and objections to the ALJ's recommended decision on 15 August 2003. In its final agency decision, the agency declined to adopt the entire recommended decision of the ALJ. The final agency decision stated,

> [i]t is recommended that a comprehensive person centered plan be developed that includes a 24/7 crisis plan among other identified treatment and supports. This plan should identify the desired outcomes for A.L.['s] health, safety and well being in order to meet the mental needs identified by a comprehensive assessment. These services should be covered by EPDST.

However, the agency's final decision failed to state its reasons for refusing to accept the recommended decision of the ALJ.

D.B. then filed a petition for judicial review on 14 November 2003 in Buncombe County Superior Court. The superior court vacated the final agency decision, concluded as a matter of law that the requested Medicaid relief was not medically necessary, and reinstated the original denial of relief by BRC. From the superior court's order, D.B. now appeals.

## Analysis

On appeal D.B. contends, *inter alia*, that the superior court exceeded its authority under the pre-2001 version of the Administrative Procedure Act, which is applicable in the instant case. We agree.

We note that, although the Administrative Procedure Act (APA) has been amended to make new procedures and standards applicable, the amendments only apply to cases commenced on or after January 2001. N.C. Gen. Stat. § 150B-151 (2003). Because the present case was commenced with a December 2000 filing in the OAH, the procedures and standards afforded in the pre-2001 statute apply.

When under the applicable version of the APA a petition for review of an agency decision is filed in superior court, the superior court acts as an appellate court; both this court and the superior court must utilize the same standard of review. *See Teague v. Western Carolina University*, 108 N.C. App. 689, 691, 424 S.E.2d 684, 686, *disc. review denied*, 333 N.C. 466, 427 S.E.2d 627 (1993). "If it is alleged that an agency's decision was based on an error of law then a *de novo* review is required. A review of whether the agency decision is supported by the evidence, or is arbitrary or capricious, requires the court to employ the whole record test." *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). The whole record test generally requires examination of the entire record, including the evidence which detracts from the agency's decision. *Id.* at 503, 402 S.E.2d at 354. " 'The "whole record" test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached.' " *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987) (citations omitted), *disc. review denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). "Ultimately, the reviewing court must determine whether the administrative decision had a rational basis in the evidence." *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 531, 372 S.E.2d 887, 890 (1988).

In the instant case, the requisite substantive and procedural review to be conducted by the judiciary is established by the following statutory provision:

(a) In reviewing a final decision in a contested case . . . **[f]irst**, the court shall determine whether the agency heard new evidence after receiving the recommended decision. If the court determines that the agency heard new evidence, the court shall reverse the decision or remand the case to the agency to enter a decision in accordance with the evidence in the official record. **Second**, if the agency did not adopt the recommended decision, the court shall determine whether the agency's decision states the specific reasons why the agency did not adopt the recommended decision. If the court determines the agency did not state specific reasons why it did not adopt a recommended decision, the court shall reverse the decision or remand the case to the agency to enter specific reasons.

N.C. Gen. Stat. § 150B-51(a) (1999) (emphasis added). The plain language of this statute requires the trial court to make these two threshold determinations **before** determining whether there is substantial evidence to support an agency decision: "After making the determinations, if any, required by subsection (a), the court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings." *Id.*[1] The superior court's failure to apply the appropriate standard of review does not necessarily require remanding the case to the superior court if this Court is able to "reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b)." *N.C. Dep't of Env't & Natural Res. v. Carroll,* 358 N.C. 649, 665, 599 S.E.2d 888, 898 (2004).

In the instant case, the superior court did not make the procedural inquiry required by N.C. Gen. Stat. § 150B-51(a) before undertaking a substantive review of the agency's decision. Further, upon making its substantive review of the final agency decision, the superior court improperly entered an order containing new findings of fact. *See N.C. Dep't of Env't & Natural Res.,* 358 N.C. at 662, 599

---

1. The statute also gives the appellate court the authority to "reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional provisions; (2) In excess of statutory authority or jurisdiction of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or (6) Arbitrary or capricious." N.C. Gen. Stat. § 150B-51(b) (1999). However, this part of the statute is not determinative in this case because this determination can only be made after meeting the requirements of N.C. Gen. Stat. § 150B-51(a) which was not done in this case.

S.E.2d at 896 ("In a contested case under the APA . . . 'there is but one fact-finding hearing of record when witness demeanor may be directly observed.' Thus, the ALJ who conducts a contested case hearing possesses those 'institutional advantages,' that make it appropriate for a reviewing court to defer to his or her findings of fact.") (citations omitted). Moreover, the superior court's order fails to indicate that it employed the "whole record" test in reviewing the final agency decision. The trial court's actions may be unproblematic under the amended APA; however, the superior court was bound by the pre-2001 APA in the present case. N.C. Gen. Stat. § 150B-51 (2003) (In the event that the agency does not adopt the recommended decision of the ALJ, the court must review the official record *de novo* and shall make findings of fact and conclusions of law, giving no deference to prior decisions made in the case and unbound by the findings of fact and conclusions of law made in the final agency decision.).

In the instant case, there were conflicting views between the physicians who testified whether A.L.'s requested crisis intervention and stabilization services were medically necessary. Some of the testifying physicians opined that the requested services were medically necessary, while others thought of these services as merely medically desirable. On these facts, the ALJ found by a preponderance of the evidence that the Medicaid services requested for A.L. were medically necessary and therefore made a recommended decision that A.L. be provided with crisis intervention and stabilization services in accordance with the recommendations of her treating physicians. In making its final decision, the agency decided not to adopt the recommended decision of the ALJ, but it failed to state the specific reasons for this course of action.

We note that, given the breadth of medical opinions offered which constitutes substantial evidence, the final agency decision would be affirmed under the whole record test if the agency had stated appropriate reasons for rejecting the ALJ's decision. *See In re Community Association*, 300 N.C. 267, 282-83, 266 S.E.2d 645, 656 (1980) (holding that, where the case is one of conflicting views, the court is not permitted to replace the agency's view with views of its own where the reasons for adopting this view, in light of the whole record, appear to be implicit in the order). However, N.C. Gen. Stat. § 150B-51 (1999) dictates the precise procedural steps that must be followed by appellate courts. The superior court, acting as an appellate court, did not follow these standards.

N.C. Gen. Stat. § 150B-51 requires, *inter alia*, that a threshold determination be made by the superior court to determine whether an agency rejected an ALJ decision without stating the specific reasons for doing so; if the agency had not provided specific reasons, the court is not permitted to conduct substantive review and instead must reverse or remand on the procedural issue. In the absence of such stated reasons, the courts cannot "reasonably determine from the record whether the petitioner's asserted grounds for challenging the [substance of the] agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b)." *N.C. Dep't of Env't & Natural Res.*, 358 N.C. at 665, 599 S.E.2d at 898.

Accordingly, given that the agency failed to provide a rationale for rejecting the ALJ's recommendation in the case *sub judice*, the superior court could not make a reasonable determination as to whether the agency's conclusions were supported by substantial evidence. The failure of the superior court to remand on this ground constituted reversible error.

Accordingly, we remand to the superior court with instructions to remand to the agency for specific findings why the agency did not adopt the recommended decision of the ALJ. In light of our disposition it is unnecessary to address the remaining issues briefed on appeal.

Vacated and remanded.

Judges TYSON and BRYANT concur.

