DENNIS H. JOYNER, EXECUTOR OF THE ESTATE OF LEOLA H. JOYNER, PLAINTIFF
v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES,
DEFENDANT

No. COA10-670

(Filed 2 August 2011)

**1. Public Assistance—Medicaid—improper transfer or disposal of assets**

The trial court erred by determining that decedent's execution of the pertinent deeds of trust did not constitute a transfer or disposal of assets in violation of 42 U.S.C. § 1396p(c)(1)(A) and N.C.G.S. § 108A-58.1(a) governing the operation of the Medicaid program.

**2. Public Assistance—Medicaid—uncompensated transfer lump sum payment arrangement**

The Department of Health and Human Services did not err by concluding that a transaction evidenced in and secured by a second note and deed of trust constituted an uncompensated transfer that terminated decedent's long-term care Medicaid benefits. The lump sum payment arrangement contemplated by the agreement did not reflect the fair market value of the services, if any, that decedent actually received pursuant to that contract.

ESTATE OF JOYNER v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[214 N.C. App. 278 (2011)]

**3. Attorney Fees—substantial justification—plain meaning of statute**

The trial erred by awarding attorney fees in favor of decedent's estate under N.C.G.S. § 6-19.1. Defendant agency's position did not lack substantial justification, and the argument advanced rested on the plain meaning of the relevant statutory provisions.

Appeal by respondent from order entered 7 January 2010 by Judge Walter H. Godwin, Jr., in Nash County Superior Court. Heard in the Court of Appeals 1 December 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Joel L. Johnson, for respondent-appellant.*

*Fields & Cooper, PLLC, by Mark E. Edwards, for petitioner-appellee.*

ERVIN, Judge.

Respondent North Carolina Department of Health and Human Services appeals from an order overturning its decision to impose a transfer sanction upon Decedent Leola H. Joyner and finding that DHHS acted erroneously when it terminated Decedent's long-term care Medicaid benefits. On appeal, DHHS contends that the trial court erred by concluding that the execution of deeds of trust applicable to Ms. Joyner's residence did not constitute the "transfer" or "disposal" of an asset within the meaning of applicable provisions of federal law. As an alternative basis for upholding the result reached by the trial court, Respondent Dennis H. Joyner contends that, even if the execution of deeds of trust constituted the "transfer" or "disposition" of an asset, the transfers or dispositions at issue here were made for the required fair market value. After careful consideration of DHHS' challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be reversed and that this case should be remanded to the Nash County Superior Court for further proceedings not inconsistent with this opinion.

I. Factual and Procedural Background

On 1 March 2006, Ms. Joyner executed two promissory notes secured with two correlating deeds of trust executed in favor of her son, Mr. Joyner. The first note purported to reimburse Mr. Joyner for past expenditures that had been made on his mother's behalf in the amount of $68,000.00. The second note, in the amount of $88,615.80,

was executed for the purpose of compensating Mr. Joyner for personal services which he had agreed to render to his mother in the future under the terms of a personal services agreement signed on 1 March 2006. The amount set out in these two sets of notes and deeds of trust was sufficient to fully encumber Ms. Joyner's residence.

Ms. Joyner had been a Medicaid recipient since November 2005. On 26 June 2006, the Nash County Department of Social Services informed Ms. Joyner that her long-term care Medicaid benefits would terminate as a result of the 1 March 2006 notes and deeds of trust. According to DSS, the notes and deeds of trust executed on that occasion constituted uncompensated transfers of Ms. Joyner's assets.

Ms. Joyner appealed the denial of her long-term care benefits to a local DSS hearing officer. After failing to persuade the DSS hearing officer of the merits of her position, Ms. Joyner sought review by a state hearing officer. Ms. Joyner died on 30 January 2007 without having received a decision with respect to the issues raised by her appeal.

On 29 May 2007, Mr. Joyner was appointed executor of Ms. Joyner's estate. On 15 July 2008, the state hearing officer issued a tentative opinion upholding the denial of Ms. Joyner's claim. In her decision, the hearing officer treated both transactions as uncompensated transfers, finding that the amount associated with past expenditures evidenced in the first note and deed of trust was "not provided for in a written agreement at the time the services were rendered" and that the amount evidenced in the second note and deed of trust stemmed from an impermissible transfer for future services. Ms. Joyner's estate sought review of the state hearing officer's decision by the chief hearing officer. On 21 January 2009, the chief hearing officer issued an opinion affirming the hearing officer's decision to deny Ms. Joyner's claim for long-term care benefits. Ms. Joyner's estate appealed the final agency decision to the Nash County Superior Court.

The estate's appeal came on for hearing before the trial court at the 7 December 2009 civil session of the Nash County Superior Court. On 7 January 2010, the trial court entered an order reversing the final agency decision. In its order, the trial court concluded as a matter of law:

> 3. That 42 U.S.C. §1396p(c)(1)(A) provides that the "state [Medicaid] plan must provide that if an institutionalized individual . . . disposes of assets for less than fair market value . . . the individual is ineligible for medical assistance."

4. Substantial evidence in the record in this case shows that Leola H. Joyner did not dispose of or transfer any asset when she executed the notes and deeds of trust on March 1, 2006.

5. The Respondent's decision to impose a transfer sanction on Leola H. Joyner was in violation of federal law because there was, in fact, no transfer or disposal of any asset.

6. The Respondent acted erroneously when it terminated Leola H. Joyner's long-term care Medicaid.

7. That Respondent acted without substantial justification in pressing its claim against the Petitioner and there are no special circumstances that would make the award of attorney's fees unjust.

Based on these conclusions of law, the trial court ordered that (1) the final agency decision terminating Ms. Joyner's long-term care benefits should be reversed, (2) the estate should be reimbursed for expenses incurred as a result of this action, and (3) the estate should be awarded $3,300.00 in attorneys' fees. DHHS noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Standard of Review

"The Administrative Procedure Act [APA] governs the standard of review of an administrative agency's decision." *Elliot v. N.C. Dept. of Human Resources*, 115 N.C. App. 613, 616, 446 S.E.2d 809, 811 (1994), *aff'd*, 341 N.C. 191, 459 S.E.2d 273 (1995). According to N.C. Gen. Stat. § 150B-51(b), in reviewing the actions of an administrative agency:

the court may affirm the decision of the agency or remand the case to the agency or to the administrative law judge for further proceedings. It may also reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §§] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b). "When under the applicable version of the APA a petition for review of an agency decision is filed in superior court, the superior court acts as an appellate court; both this [C]ourt and the superior court must utilize the same standard of review." *D.B. v. Blue Ridge Ctr.*, 173 N.C. App. 401, 405, 619 S.E.2d 418, 422 (2005).[1]

"If it is alleged that an agency's decision was based on an error of law then a *de novo* review is required. A review of whether the agency decision is supported by the evidence, or is arbitrary or capricious, requires the court to employ the whole record test." *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990) (citation omitted), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment" in place of the court below. *In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003). "The whole record test generally requires examination of the entire record, including the evidence which detracts from the agency's decision." *D.B.*, 173 N.C. App. at 405, 619 S.E.2d at 422. "The 'whole record' test does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views; however, it does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached." *Watson v. N.C. Real Estate Comm.*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987) (citations and quotations omitted), *disc. review denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). "Ultimately, the reviewing court must determine whether the administrative decision had a rational basis in the evidence." *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 531, 372 S.E.2d 887, 890 (1988) (citation omitted). We will now apply the

---

1. As a result of the complexity of the present record, it may be helpful to point out that the final agency decision challenged in the estate's request for judicial review simply adopted the findings and conclusions contained in the hearing officer's decision. As a result, the agency decision actually at issue before the trial court as a result of the estate's request for judicial review is the hearing officer's decision.

applicable standard of review to the issues that have been presented to us for review.

## B. Substantive Legal Issues

### 1. Transfer of Assets

[1]  On appeal, DHHS argues that the trial court erred by determining that Ms. Joyner had not impermissibly transferred or disposed of assets in violation of the relevant statutory provisions governing the operation of the Medicaid program. As a result of the fact that the first question raised by DHHS' challenge to the trial court's order involves the application of specific statutory provisions to undisputed facts, we review the first aspect of DHHS' challenge to the trial court's order utilizing a *de novo* standard of review. After carefully examining the arguments presented by the parties concerning the proper construction of the relevant statutory provisions, we conclude that the trial court erroneously determined that the transactions at issue here did not involve "transfers" or "dispositions" of Ms. Joyner's assets.

The transactions at issue here both involve the execution of a deed of trust for the purpose of securing an indebtedness evidenced by a note. "The deed of trust results in legal title to the property being in the trustee." *Sprouse v. North River Ins. Co.*, 81 N.C. App. 311, 316, 344 S.E.2d 555, 559, *disc. review denied*, 318 N.C. 284, 348 S.E.2d 344 (1986). A "deed of trust is 'essentially a security' by which 'the legal title to real property is placed in one or more trustees, to secure the repayment of a sum of money or the performance of other conditions.' " *In re Foreclosure of Azalea Garden Bd. & Care, Inc.*, 140 N.C. App. 45, 51, 535 S.E.2d 388, 393 (2000) (quoting Black's Law Dictionary 414 (6th ed. 1990)). Applying these well-established legal principles to the facts at issue in this case, we conclude that the transfer of the title to Ms. Joyner's residence for the purpose of securing the notes involved a transfer or disposition of one of Ms. Joyner's assets.[2] We now consider whether this transaction constituted a "disposal" or a "transfer" of an asset under the applicable Medicaid provisions.

42 U.S.C. § 1396p(c)(1)(A) provides that:

In order to meet the requirements of this subsection for purposes of section 1396a(a)(18) of this title, the State plan must provide that if an institutionalized individual or the spouse of

---

2. The arguments advanced in the parties' briefs focus on the "transfer" or "disposition" issue rather than the issue of whether an "asset" was involved. As a result, we need not address or definitively resolve the question of whether the "transfers" or "dispositions" at issue here involved an "asset."

> such an individual . . . disposes of assets for less than fair market value on or after the look-back date specified in subparagraph (B)(i), the individual is ineligible for medical assistance for services described in subparagraph (C)(i) . . . during the period beginning on the date specified in subparagraph (D) and equal to the number of months specified in subparagraph (E).

In compliance with this statutory provision, the General Assembly enacted N.C. Gen. Stat. § 108A-58.1, which provides that:

> Except as otherwise provided herein, an individual who is otherwise eligible to receive medical assistance under this Part is ineligible for Medicaid coverage and payment for the services specified in subsection (d) during the period specified in subsection (c) if the individual or the individual's spouse transfers an asset for less than fair market value on or after the "look-back date" specified in subsection (b).

As a result, the relevant federal statutory provision speaks to a "disposing of assets" while the relevant state statutory provision speaks to "transfers of assets."

In seeking to persuade us to uphold the trial court's order, Mr. Joyner argues that the use of the word "transfer" in N.C. Gen. Stat. § 108A-58.1(a) conflicts with the use of the word "dispose" in 42 U.S.C. § 1396p(c)(1)(A). According to Mr. Joyner, the relevant provisions of 42 U.S.C. § 1396p(c)(1)(A) control over the conflicting provisions of any state implementing statute, such as N.C. Gen. Stat. § 108A-58.1(a), so that the ultimate question before us is the extent, if any, to which Ms. Joyner "disposed" of an asset. In light of this analysis, Mr. Joyner further argues that the execution of a deed of trust does not constitute a "disposition." We disagree.

Admittedly, in the event of a conflict between federal and state Medicaid statutes, the federal statutes must be deemed controlling. N.C. Gen. Stat. § 108A-58.1(l)(1) (stating that "[t]his section shall be interpreted and administered consistently with governing federal law, including 42 U.S.C. § 1396p(c)"). A careful review of the relevant statutory provisions convinces us, however, that there is no conflict between 42 U.S.C. § 1396p(c)(1)(A) and N.C. Gen. Stat. § 108A-58.1.

As the title of 42 U.S.C. § 1396p indicates, this section of the United States Code addresses "Liens, adjustments and recoveries, and transfers of assets." 42 U.S.C. § 1396p. 42 U.S.C. § 1396p(c)(1)(A)

requires state Medicaid plans to satisfy 42 U.S.C. § 1396(a)(18), which provides that such state plans must "comply with the provisions of [42 U.S.C. §] 1396p [] with respect to liens, adjustments and recoveries of medical assistance correctly paid, transfers of assets, and treatment of certain trusts." 42 U.S.C. § 1396a(a)(18). 42 U.S.C. § 1396p(c), which specifies the period of Medicaid ineligibility, provides, in pertinent part, that:

(D)(i) In the case of a transfer of assets made before February 8, 2006, the date specified in this subparagraph is the first day of the first month during or after which assets have been transferred for less than fair market value and which does not occur in any other period of ineligibility under this subsection.

(ii) In the case of a transfer of asset made on or after February 8, 2006, the date specified in this subparagraph is the first day of a month during or after which assets have been transferred for less than fair market value, or the date on which the individual is eligible for medical assistance under the State plan and would otherwise be receiving institutional level care described in subparagraph (C) based on an approved application for such care but for the application of the penalty period, whichever is later, and which does not occur during any other period of ineligibility under this subsection.

(E)(i) With respect to an institutionalized individual, the number of months of ineligibility under this subparagraph for an individual shall be equal to-

(I) the total, cumulative uncompensated value of all assets transferred by the individual (or individual's spouse) on or after the look-back date specified in subparagraph (B)(i), divided by

(II) the average monthly cost to a private patient of nursing facility services in the State (or, at the option of the State, in the community in which the individual is institutionalized) at the time of application.

(ii) With respect to a noninstitutionalized individual, the number of months of ineligibility under this subparagraph for an individual shall not be greater than a number equal to-

(I) the total, cumulative uncompensated value of all assets transferred by the individual (or individual's spouse) on or after the look-back date specified in subparagraph (B)(i), divided by

(II) the average monthly cost to a private patient of nursing facility services in the State (or, at the option of the State, in the community in which the individual is institutionalized) at the time of application.

(iii) The number of months of ineligibility otherwise determined under clause (i) or (ii) with respect to the disposal of an asset shall be reduced-

(I) in the case of periods of ineligibility determined under clause (i), by the number of months of ineligibility applicable to the individual under clause (ii) as a result of such disposal, and

(II) in the case of periods of ineligibility determined under clause (ii), by the number of months of ineligibility applicable to the individual under clause (i) as a result of such disposal.

(iv) A State shall not round down, or otherwise disregard any fractional period of ineligibility determined under clause (i) or (ii) with respect to the disposal of assets.

42 U.S.C. § 1396p(D-E). A careful reading of 42 U.S.C. § 1396p as a unified whole clearly indicates that Congress used the words "transfer" and "dispose" interchangeably. As a result of the fact that these two words are used as synonyms in the relevant statutory provisions, the fact that Congress did not delineate any situations in which a "disposition" and a "transfer" had different meanings, the fact that Congress did not specifically define either "transfer" or "disposition," and the fact that nothing in the context in which either word is used suggests the appropriateness of anything other than the ordinary meaning of either word, we are required to use the plain meanings of both words in construing the relevant statutory language. *Johnson v. United States*, 529 U.S. 694, 707, 146 L. Ed. 2d 727, 740, 120 S. Ct. 1795, 1804 (2000); *Wood v. Stevens & Co.*, 297 N.C. 636, 643, 256 S.E.2d 692, 697 (1979) (citing *In re Trucking Co.*, 281 N.C. 242, 252, 188 S.E.2d 452, 458 (1972) and *State v. Wiggins*, 272 N.C. 147, 153, 158 S.E.2d 37, 42 (1967), *cert. denied*, 390 U.S. 1028, 20 L. Ed. 2d 285, 88 S. Ct. 1418 (1968)).

A "transfer" is "[a]ny mode of disposing of or parting with an asset or an interest in an asset, including a gift, the payment of money, release, lease, or creation of a lien or other encumbrance." BLACK'S LAW DICTIONARY 1636 (9th ed. 2009). Similarly, the expression "dispose of" is defined in part as "to transfer into new hands or to the control of someone else." *Webster's Third New International*

*Dictionary* 654 (1966); *see also* BLACK'S LAW DICTIONARY 471 (6th ed. 1990) (defining "dispose of" in part as "to alienate or direct the ownership of property as disposition by will" and "to alienate, relinquish, part with, or get rid of"). As should be obvious, these definitions, like the relevant statutory provisions, treat "transfers" and "dispositions" as synonymous. In light of that understanding, which precludes any determination that the relevant provisions of federal and state law are in conflict with each other, we conclude that Ms. Joyner's transfer of the title to her residence through the execution of deeds of trust for the purpose of securing notes payable to Mr. Joyner constituted the "disposal" of an asset for purposes of 42 U.S.C. § 1396p and the "transfer" of an asset for purposes of N.C. Gen. Stat. § 108A-58.1 and that the trial court erred by concluding otherwise.[3]

## 2. Payment of Compensation

[2] As an alternative basis for upholding the trial court's order, Mr. Joyner argues that the transfers in question were supported by adequate compensation for purposes of 42 U.S.C. § 1396p and N.C. Gen. Stat. § 108A-58.1 (a). Although the trial court did not address the issue of whether either transfer was made for "fair market value" at any point in its order, we must still attempt to ascertain if we "can reasonably determine from the record whether [a party's] asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C. [Gen. Stat.] § 150B-51(b)." *N.C. Dept. of Env't and Natural Res. v. Carroll*, 358 N.C. 649, 665, 599 S.E.2d 888, 898 (2004). Thus, we turn to the issue of whether the asset transfers evidenced and secured by the notes and deeds of trust reflected the required "fair market value."

---

3. In his brief, Mr. Joyner argues, in reliance on *Shannonhouse v. Wolfe*, 191 N.C. 769, 774, 133 S.E. 93, 96 (1926) (holding that the power to "have entire control, disposal, and management of any and all property whether real or personal, which shall at any time be given or conveyed to [certain trustees] for the said community house or of the income or profits or furtherance of any of the activities of said community house" did not authorize "the execution of a mortgage upon the property for the purpose of building a house" on the grounds that "the mere naked power of sale implied in the word 'disposal' " "does not necessarily imply or delegate the power to mortgage"), that the term "dispose of" does not include anything short of a sale of the entire "bundle of rights" associated with ownership of a tract of real property. Aside from the fact that enforcing the notes and deeds of trust will, in time, result in transferring the entire value of Ms. Joyner's residence to Mr. Joyner, we believe that the decision in *Shannonhouse* was heavily influenced by the nature of the instrument under consideration in that case, which created a charitable trust. As a result, we do not believe that the word "dispose" has the limited meaning contended for by Mr. Joyner or that *Shannonhouse* controls the outcome in this case.

### a. First Note and Deed of Trust

The first note and deed of trust relate to expenditures which Mr. Joyner had made on Ms. Joyner's behalf prior to the execution of the instruments in question. As the hearing officer's findings of fact reflect, the reimbursement of these expenditures was "not provided for in a written agreement at the time the services were rendered." Mr. Joyner contends, however, that the note and deed of trust evidencing and securing this $68,000.00 amount "were executed in fulfillment of the longstanding agreement between [Ms.] Joyner and [Mr.] Joyner" and that they should, for that reason, be deemed to support a determination that the transfer in question reflected the fair market value of services that Ms. Joyner actually received.

The principal authority upon which DHHS relied in concluding that the past expenditures upon which the first note and deed of trust are predicated did not suffice to support these instruments was the North Carolina Adult Medicaid Manual, which is an "internal instructional reference for DHHS employees in the application of DHHS policy and interpretation of the federal Medicaid requirements." *Martin v. N.C. Dept. of Health and Human Serv.*, 194 N.C. App. 716, 720, 670 S.E.2d 629, 633 (2009). As we read the relevant provisions of the Medicaid Manual, they clearly require "a written agreement for compensation at the time the care of service was received" under all circumstances involving the transfer of "cash or other assets to a family member, relative, or friend for care or services that were provided in the past." Medicaid Manual § 2240 XI.H.1. and 2.[4] Although the provisions of the Medicaid Manual are clearly entitled to some consideration in attempts to understand the rules and regulations governing eligibility for Medicaid benefits, *Cloninger v. N.C. Dept. of Health and Human Serv.*, ___ N.C. App. ___, ___, 691 S.E.2d 127, 130-31, *disc. review denied*, 364 N.C. 324, 700 S.E.2d 748 (2010); *Estate of Wilson v. Division of Soc. Servs.*, 200 N.C. App. 747, 750-53, 685 S.E.2d 135, 138-40 (2009), we have previously stated that the Medicaid Manual "merely explains the definitions that currently exist in federal and state statutes, rules and regulations" and that "[v]iolations of or failures to comply with the MAF [Medicaid] Manual [are] of no effect"

---

4. Although Mr. Joyner argues that this provision of the Medicaid Manual does not apply to the present case on the grounds that the record contains no indication that he ever provided services to Ms. Joyner on an uncompensated basis and that such evidence is a prerequisite to the effectiveness of the "written agreement" requirement, we need not decide which party has the better of this disagreement given our conclusion that the Medicaid Manual does not control the outcome in this case.

ESTATE OF JOYNER v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[214 N.C. App. 278 (2011)]

unless the act or omission in question amounts to a "failure to meet the requirements set out in the federal and state statutes and regulations[.]" *Okale v. N.C. Dept. of Health and Human Servs.*, 153 N.C. App. 475, 478-79, 570 S.E.2d 741, 743 (2002).[5] As a result, the mere fact that the "written agreement" requirement appears in the Medicaid Manual does not, without more, justify upholding DHHS' determination that the transfer associated with the first note and deed of trust was not supported by adequate compensation.

In addition to its reliance on the Medicaid Manual, DHHS points to the well-established legal principle that "[p]ast consideration or moral obligation is not adequate consideration to support a contract" and that "[s]ervices performed by one family member for another, within the unity of the family, are presumptively 'rendered in obedience to a moral obligation and without expectation of compensation.' " *Estate of Graham v. Morrison*, 156 N.C. App. 154, 159, 576 S.E.2d 355, 359 (2003) (citing *Jones v. Winstead*, 186 N.C. 536, 540, 120 S.E.2d 89, 90-91 (1923) and quoting *Jones v. Saunders*, 254 N.C. 644, 649, 119 S.E.2d 789, 793 (1961)). Although Mr. Joyner cites findings of fact by both the trial court and the hearing officer in support of his claim to have successfully rebutted the presumption that the expenditures that underlie the first note and deed of trust were provided on a gratuitous basis, we do not find this argument persuasive because the trial court was not, under the applicable standard of review, entitled to make factual findings and because the hearing officer's findings of fact do not directly address the extent to which Mr. Joyner rebutted the presumption that care and services provided to family members are rendered "in obedience to a moral obligation" and were, therefore rendered on the basis of an inappropriate legal standard. When a trial court "clearly heard the evidence and found the facts against [a party] under a misapprehension of the controlling law," "the factual findings may be set aside on the theory that the evidence should be considered in its true legal light." *A.M.E. Zion Church v. Union Chapel A.M.E. Zion Church*, 64 N.C. App. 391, 411-12, 308 S.E.2d 72, 85 (1983) (citing *Helms v. Rea*, 282 N.C. 610, 620, 194 S.E.2d 1, 8 (1973), and *McGill v. Lumberton*, 215 N.C. 752, 744, 3 S.E.2d 324, 326 (1939)), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 649 (1984). As a result, since the agency never addressed the ultimate issue that must be resolved in connection with Mr. Joyner's challenge to DHHS' decision to treat the first note and deed of trust as an

---

5. DHHS has cited no authority in its brief tending to suggest that the legal status of the Medicaid Manual has changed since *Okale*, and we have not found any such authority in the course of our own research.

uncompensated transfer, this case must be remanded to the trial court for further remand to the agency for the entry of a new decision containing adequate findings of fact and conclusions of law relating to the issue of whether the expenditures evidenced and secured by the first note and deed of trust constituted uncompensated transfers, with the agency to make the necessary credibility determinations concerning the extent to which the parties had actually agreed that Mr. Joyner would be compensated for the expenditures that underlie the first note and deed of trust at or prior to the time at which those expenditures were made or whether the first note and deed of trust amounted to an after-the-fact attempt to circumvent the applicable rules against uncompensated asset transfer by Medicaid recipients on remand.[6]

### b. Second Note and Deed of Trust

The second note and deed of trust relate to a lump sum payment that Ms. Joyner agreed to make to Mr. Joyner for services to be provided in the future. The nature and type of services that Mr. Joyner was to provide to Ms. Joyner, the hourly rate at which Mr. Joyner expected to be reimbursed for services provided to Ms. Joyner, and the number of personal service hours that the parties expected that Mr. Joyner would provide to Ms. Joyner were spelled out in the agreement. Instead of providing that payment would be made on a periodic basis as services were rendered, however, the agreement required the payment of a lump sum amount calculated using the specified hourly rate, the number of hours of care anticipated to be provided each week, and Ms. Joyner's life expectancy on the date upon which the agreement was executed. The agreement contained no provision for any sort of adjustment to the lump sum amount based on the date upon which Ms. Joyner died or any inability on the part of Mr. Joyner to provide the required services. Although both parties agree that the relevant provisions of federal and state law permit personal service agreements, they disagree sharply over the terms and conditions under which such agreements are permissible and whether the agreement at issue here falls in the permissible or impermissible category.

In concluding that the agreement evidenced by the second note and deed of trust resulted in an impermissible uncompensated trans-

---

6. In addition, while Mr. Joyner attempts to draw a distinction between the provision of care and the making of out-of-pocket expenditures, we agree with DHHS that both the provision of care and the making of out-of-pocket expenditures should be treated in the same manner for the purpose of applying the applicable uncompensated transfer rules.

fer, the agency relied on language contained in the Medicaid Manual specifically providing that "[t]ransfers for services to be provided in the future are unallowable because they have not been compensated" and that "[a] transfer for future compensation is sanctionable." Medicaid Manual VII.A. As we have previously noted, the Medicaid Manual, standing alone, does not have binding effect. However, unlike the "written agreement" requirement relating to payment for past services, we believe that the prohibition on anticipatory lump sum payments of the type at issue here represent a proper application of the statutory reference to "fair market value" and should be upheld.

Application of the "fair market value" concept, as that term is utilized in connection with contracts for personal services, implies consideration of the nature of the service received and the value of the service in question. *Turner v. Furniture Co.*, 217 N.C. 695, 697, 9 S.E.2d 379, 380 (1940) (stating that, in the event that there is "no agreement as to the value of services to be paid for services, the person performing them is entitled to recover what they are reasonably worth, based on the time and labor expended, skill, knowledge and experience involved, and other attendant circumstances"); *Environmental Landscape Design v. Shields*, 75 N.C. App. 304, 307, 330 S.E.2d 627, 629 (1985) (stating that "the reasonable value of services rendered is largely determined by the nature of the work and the customary rate of pay for such work in the community and at the time the work was performed"). Thus, the concept of fair market value as implied in the present context focuses on the actual work performed and the market value of that work.

As a practical matter, it is very difficult for us to see how a lump sum advance payment for future services could ever actually represent the fair market value of those services for purposes of 42 U.S.C. § 1396p(c)(1)(A) or N.C. Gen. Stat. § 108A-58.1(a). Simply put, there are too many contingencies that must be addressed and accounted for in order to determine whether such a lump sum amount actually reflected the market value of what was received. *See Bedell v. Commisioner*, 30 F.2d 622, 624 (2d Cir. 1929) (stating that "it is absurd to speak of a promise to [provide a service] in the future as having a 'market value,' fair or unfair"). For example, as we have already suggested, the recipient may not live as long as is anticipated in the calculation utilized to develop the lump sum payment or the provider might become unable to render all of the service called for in the agreement throughout the relevant period. As a result, we conclude that the lump sum payment arrangement contemplated by the

agreement underlying the second note and deed of trust simply did not reflect the fair market value of the services, if any, that Ms. Joyner actually received pursuant to that contract and that the hearing officer appropriately concluded that the transaction evidenced in and secured by the second note and deed of trust constituted an uncompensated transfer.[7]

### 3. Attorney's Fees

[3] Aside from challenging the trial court's decision on the merits, Respondent also argues that the trial court erred by awarding attorney's fees in favor of Ms. Joyner's estate pursuant to N.C. Gen. Stat. § 6-19.1. We agree.

In awarding attorney's fees to the estate, the trial court concluded that DHHS "acted without substantial justification in pressing its claim." However, an agency need not have been legally correct in order to avoid liability for attorney's fees. An award of attorney's fees pursuant to N.C. Gen. Stat. § 6-19.1 is not appropriate in the event that the agency's position "was rational and legitimate to such degree that a reasonable person could find it satisfactory or justifiable in light of the circumstances then known to the agency." *Crowell Constructors v. State ex rel. Cobey*, 342 N.C. 838, 844, 467 S.E.2d 675, 679 (1996) (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 101 L. Ed. 2d 490, 504, 108 S. Ct. 2541 (1988). As we have already noted, the argument advanced by DHHS rested on the plain meaning of the relevant statutory provisions. Even if we had declined to accept the interpretation of the statutory language at issue here advanced by DHHS, we would have reached the conclusion that the agency's refusal to acquiesce in Mr. Joyner's interpretation of the relevant statutory provisions rested on a reasonable view of the controlling legal authorities. As a result, we cannot agree with the trial court that DHHS' position lacked "substantial justification," *Daily Express, Inc. v. Beatty*, ___ N.C. App. ___, ___, 688 S.E.2d 791, 802 (2010) (reversing an attorney's fees

---

7. In his brief, Mr. Joyner argues that DHHS was prohibited from utilizing an approach to determining whether a particular transfer was uncompensated that was more restrictive than the rules applied in determining eligibility for the Supplemental Security Income (SSI) program, 42 U.S.C. § 1396a(a)(10)(C)(i)(III), and that the calculation of the lump sum amount specified in the agreement between Ms. Joyner and Mr. Joyner was calculated consistently with the Program Operations Manual System employed by that program. However, the rules upon which this aspect of Mr. Joyner's argument rely only apply to the determination of "income and resource eligibility." 42 U.S.C. § 1396a(r)(2)(B). As a result of the fact that the methodology utilized in connection with the imposition of a transfer sanction is not relevant to the determination of Medicaid "income and resource eligibility," this aspect of Mr. Joyner's argument lacks merit.

ESTATE OF JOYNER v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[214 N.C. App. 278 (2011)]

award even though the agency's legal position was ultimately determined to be incorrect because the agency's interpretation "had some level of support in both logic and the language enacted by the General Assembly"), and reverse its decision to award attorney's fees to Mr. Joyner.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court erred by finding that the execution of the deeds of trust in question did not constitute a "transfer" or "disposal" of assets for purposes of 42 U.S.C. § 1396p(c)(1)(A) and N.C. Gen. Stat. § 108A-58.1(a), that further proceedings are necessary to determine whether the transactions evidenced in and secured by the first note and deed of trust reflected fair market value, that the agency correctly determined that the transaction evidenced in and secured by the second note and deed of trust constituted an uncompensated transfer, and that the trial court erred by awarding attorney's fees to Ms. Joyner's estate. As a result, the trial court's order should be, and hereby is, reversed and this case should be, and hereby is, remanded to the trial court for further remand to DHHS for the purpose of conducting additional proceedings not inconsistent with this opinion.[8]

REVERSED AND REMANDED.

Chief Judge MARTIN and Judge McGEE concur.

---

8. As a result of our decision to reverse the trial court's order and to remand this case for further proceedings at the agency level, we also reverse the trial court's determination that DHHS should "reimburse [Mr. Joyner] for the cost incurred for care from the date Nash DSS terminated long-term care Medicaid benefits to the date of [Ms.] Joyner's death[.]"