DILLON, Judge.
*582 Cassandra Swaringen Christian ("Petitioner") appeals from an order entered by the trial court affirming the revocation of her child care license. Petitioner brings challenges to the procedures used by the Department of Health and Human Services ("DHHS") and the Administrative Law Judge in revoking her license, essentially contending that she was not given ample opportunity to "show compliance" before the revocation. We disagree, and therefore affirm.
I. Background
DHHS is the state agency tasked with licensing and monitoring child care services in North Carolina. Beginning in 1999 and pursuant to licensure by DHHS, Petitioner owned and operated a child care facility out of her home in Albemarle. Petitioner's license restricted her to a maximum of eight (8) children, with no more than five (5) of the children being of preschool age. After undergoing medical treatment in 2015, Petitioner enlisted the help of LaToya Baldwin to supervise the children.
As part of its oversite, DHHS sends licensing consultants to inspect the operations of its licensees. In 2015, a licensing consultant for DHHS (the "Consultant") conducted five separate visits to Petitioner's home. Over the course of these five visits, the Consultant cited Petitioner for various violations. After each visit, Petitioner sent a letter of correction to DHHS describing how she would purportedly fix each violation.
Notably, in January 2015, the Consultant arrived to discover that Ms. Baldwin, Petitioner's assistant, was the only adult on the premises caring for the children. The Consultant determined that Ms. Baldwin lacked *583 necessary documentation and certifications. The Consultant informed Petitioner that Petitioner could not employ Ms. Baldwin without proper credentials. Petitioner's letter of correction to DHHS stated that she would no longer employ Ms. Baldwin.
During an August 2015 visit, the Consultant discovered that Petitioner was caring for nine (9) children, one more than allowed by her license, and that seven (7) of the children were of preschool age, two more than allowed by her license.
The next month, during a September 2015 visit, the Consultant discovered that Petitioner was caring for seven (7) preschool-aged children, two more than allowed by her license, and that Petitioner attempted to conceal her violation by hiding five (5) of the children in her basement unattended during the visit. During the visit, the Consultant initially found Petitioner caring for two (2) preschool-aged children on the main floor of Petitioner's home. The Consultant, however, then heard the sound of another child crying. Petitioner claimed that the noise was coming from the television in another room. The Consultant though ultimately discovered five (5) additional preschool-aged children hidden in Petitioner's basement. These preschool-aged children were unsupervised. Petitioner claimed that she thought Ms. Baldwin was in the basement with the children, but she later admitted that Ms. Baldwin was not present when the Consultant arrived. Of additional concern, the basement where the unsupervised children were hidden contained improperly stored cleaning supplies and a dog for which Petitioner could not produce vaccination records.
*472 Three months later, during a December 2015 visit, the Consultant only found two minor documentation violations. The Consultant explained to Petitioner that, although the Consultant was inspecting the premises as part of the licensure reissuance process, administrative proceedings were underway based on Petitioner's earlier violations.
Nine days after this visit, on 10 December 2015, DHHS gave Petitioner written notice of its intent to revoke her license, and informed Petitioner of her "opportunity ... to submit written information [within fifteen days] as to why ... [revocation] should not be taken[ ][.]" Petitioner promptly responded by letter, conceding that she had made mistakes but asking that her license not be revoked and requesting an opportunity to show that revocation was unnecessary.
Three months later, in March 2016, after considering the Consultant's concerns and Petitioner's response, DHHS decided to revoke Petitioner's license.
*584 Petitioner contested DHHS's decision, alleging that she was told by the Consultant that if she did not repeat her violations discovered during the September 2015 visit (when Petitioner hid five children in her basement unsupervised) that she "would be fine." In August 2016, after a hearing on the matter, an administrative law judge issued an order upholding DHHS's decision to revoke Petitioner's license.
Petitioner then appealed to the trial court, contending in part that her license was revoked based on an improper procedure. In February 2017, after hearing arguments, the trial court affirmed the revocation of Petitioner's license.
Petitioner now appeals to this Court.
II. Analysis
A. Standard of Review
Petitioner claims that DHHS violated her constitutional right to due process by revoking her license before allowing her the opportunity to show that she had brought her daycare into compliance. Additionally, Petitioner alleges that each of the courts below erred in finding that the factual circumstances of her case merited a revocation of her license.
Petitioner's appeal lies with this Court from the superior court's decision to affirm the decision of the administrative law judge. N.C. Gen. Stat. § 150B-52 (2015). Our standard of review depends on the nature of the challenge being addressed. ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C., 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) ; N.C. Gen. Stat. § 150B-51(c).
For instance, as our Supreme Court has instructed, "in cases appealed from administrative tribunals, questions of law receive do novo review[.]" N.C. Dep't of Env't & Nat. Res. v. Carroll , 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004) (internal citation omitted). "Under the de novo standard of review, [this Court] considers the matter anew and freely substitutes its own judgment for the agency's." Id. at 660, 599 S.E.2d at 895 (internal citations and marks omitted).
However, "[w]hen the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." Mann Media, Inc. v. Randolph Cty. Planning Bd. , 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002). Using the whole record standard of review, we examine the entire record to determine whether the agency decision was based on substantial evidence such that a reasonable *585 mind may reach the same decision. North Carolina Dept. of Environment and Natural Resources v. Carroll , 358 N.C. 649, 674, 599 S.E.2d 888, 903-04 (2004).
Lastly, because this case comes to us from the superior court, our review necessitates an examination of the superior court's standard of review:
[W]hen an appellate court reviews a superior court order regarding an agency decision, the appellate court examines the trial court's order for error of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.
*473 Mann Media, Inc., 356 N.C. at 14, 565 S.E.2d at 18.
B. Scope of Review
Petitioner argues that the superior court declined to address many of Petitioner's issues based on its determination that Petitioner failed to raise them in her original hearing before the administrative law judge. We note that the trial court did consider many of Petitioner's legal arguments, notwithstanding the labeling of many of that court's legal conclusions as "findings of fact." Assuming, arguendo , that Petitioner's issues were properly preserved, we choose to address them here and conclude that there was no reversible error in the decision of the superior court. We now review each issue in turn, using the appropriate standard of review.
C. Procedural Arguments
Petitioner argues that procedural rights under the federal and state constitutions, as well as provided by state statute, were violated. We disagree.
The federal and state constitutions both prohibit the deprivation of life, liberty, or property without due process of law. U.S. Const. amend. XIV ; N.C. Const. sec. 19 ("No person shall be deprived of his life, liberty, or property, but by the law of the land."); see State v. Ballance , 229 N.C. 764, 769, 51 S.E.2d 731, 734 (1949) ("The term 'law of the land' is synonymous with 'due process of law.' ").
As we have stated, "[w]ithout question, procedural due process requires that an individual receive adequate notice and a meaningful opportunity to be heard before [s]he is deprived of life, liberty, or property. Moreover, a professional license [ ] is a property interest, and is thus *586 protected by due process." Herron v. N.C. Bd. of Exam'rs for Engin'rs & Surveyors , --- N.C. App. ----, ----, 790 S.E.2d 321, 327 (2016) (internal citation and marks omitted); see Tully v. City of Wilmington , --- N.C. ----, ----, 810 S.E.2d 208, 217 (2018) ("[A] property interest ... can arise from or be created by statute, ordinance, or express or implied contract, the scope of which must be determined with reference to state law." (internal citation omitted) ).
Here, Petitioner was afforded due process. She was notified of the violations alleged against her. She was allowed to respond, and she did so by admitting to the violations. Petitioner was also afforded a hearing before an administrative law judge to present her case. See Johnston v. State , 224 N.C. App. 282, 305, 735 S.E.2d 859, 875 (2012) (citing Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") ).
Further, Petitioner was not denied the procedure required under North Carolina law. North Carolina law permits revocation of a child care license as a penalty for child maltreatment following administrative action. N.C. Gen. Stat. § 110-105.6 (2015) ("[W]hen an investigation confirms that child maltreatment did occur in a child care facility, the Department may issue an administrative action up to and including summary suspension and revocation of the facility's child care license.") Our law also requires that a license holder receive notice of a pending action and be given a chance to respond:
Before the commencement of proceedings for the ... revocation ... of any license ..., the agency shall give notice to the licensee, pursuant to the provisions of [N.C. Gen. Stat. §] 150B-23.... In either case, the licensee shall be given an opportunity to show compliance with all lawful requirements for retention of the license ....
N.C. Gen. Stat. § 150B-3(b) (2015) (emphasis added); 10A NCAC 9.2206(b) (2015) (describing the process for revocation of a child care license by DHHS).
Petitioner concedes that she was given notice in early December 2015 of DHHS's proceedings for revoking her child care license based on her 2015 violations, largely due to her hiding children unattended in unsafe conditions in her basement and her dishonesty to the Consultant. The notice allowed Petitioner a chance to respond, to which she sent a letter. In her response, Petitioner admitted *474 to the violations, rather than contending that she had been in compliance. *587 We conclude that DHHS followed N.C. Gen. Stat. § 150B-3(b) by affording Petitioner the opportunity to show that she had not been out of compliance. Further, the Office of Administrative Hearings granted Petitioner an administrative hearing to formally review Petitioner's case, and Petitioner participated in a full hearing on her claims. We hold that Petitioner received notice of the pending action against her and had ample opportunity to show compliance.
D. Factual Basis for Revocation
Petitioner also argues that the factual circumstances of her case did not warrant a revocation of her license. Before revoking Petitioner's license, a DHHS internal review panel conducted its own internal review, and reviewed the Consultant's visit reports, a letter filed by the Consultant, and Petitioner's rebuttal response. The internal review panel concluded that Petitioner's response "did not include an explanation of the violations that would warrant reducing the type of action" and determined that "the seriousness of the incident and falsification warrant[ed] a revocation of license."
Indeed, lying to a DHHS licensing consultant and attempting to hide potential license restriction violations may result in a revocation:
Any effort to falsify information provided to the Department shall be considered by the Secretary to be evidence of violation ... on the part of the operator ... of the child care facility and shall constitute a cause for revoking or denying a license to such child care facility.
N.C. Gen. Stat. § 110-91(14) (2015). Additionally, maltreatment of a child in one's care is statutory grounds for punishment up to and including revocation of a child care provider's license. N.C. Gen. Stat. § 110-105.6. Child maltreatment is defined by our General Statutes as:
Any act or series of acts of commission or omission by a caregiver that results in harm, potential for harm, or threat of harm to a child. ... Acts of omission include, but are not limited to, failure to provide for the physical, emotional, or medical well-being of a child, and failure to properly supervise children, which results in exposure to potentially harmful environments.
N.C. Gen. Stat. § 110-105.3.
In September 2015, in an effort to avoid yet another citation for violation of her license's capacity restrictions, Petitioner hid a majority of *588 the preschool-aged children in her care in her basement. The children were unsupervised amidst improperly stored, hazardous chemicals, and Petitioner lied as to their presence when confronted by the Consultant. The record on appeal indicates that, after attempting to hide the children in the basement, Petitioner was momentarily unable to provide the names of the children to the Consultant. Baldwin was also unable to provide the children's names, and denied that the children had been in the basement. When the Consultant explained to Petitioner how dangerous it was to leave children unsupervised in a hazardous space, Petitioner responded that it "wasn't anything she didn't know already."
Petitioner's rebuttal response cited to an illness as the reason that she had repeat difficulties staying in compliance with licensing requirements. Petitioner continued by saying that she repeatedly took on additional clients beyond what her license allowed in order to aid families in the area. At no point did Petitioner explain or in any way address the September 2015 incident during which children were left in an unsafe environment and Petitioner provided false information to the Consultant. Pursuant to the statutes above, we hold that this incident alone was enough for DHHS to revoke Petitioner's child care license. In addition to the September 2015 incident, Petitioner was cited for numerous documentary errors over the course of 2015.
Regardless, Petitioner contends that the "opportunity to show compliance" afforded by N.C. Gen. Stat. § 150B-3(b) means that she needed only to show that she was presently in compliance with licensing requirements at the time of review, rather than needing to prove past compliance. In so doing, Petitioner assigns ambiguity to the temporal *475 aspect of the statute and requests that we construe it strictly and against DHHS. Liberty Mut. Ins. Co. v. Pennington , 356 N.C. 571, 575, 573 S.E.2d 118, 121 (2002) ("Where the language of a statute is clear and unambiguous, there is no room for judicial construction[.]") We disagree. We hold the language of N.C. Gen. Stat. § 150B-3(b) unambiguous, and read it clearly.
Petitioner's reading of the statute leads to flawed practical applications, as she reads it to solely provide an opportunity to show current compliance and explain how past infractions are being remedied to avoid the revocation of a license. In theory, showing that one is presently in compliance with licensing requirements would certainly make them qualified for licensure. The language of DHHS's process for revoking a child care license does state that a licensee must "show compliance with all requirements for retention of [his or her] license." 10A NCAC 9.2206(b).
*589 However, Petitioner would essentially have DHHS ignore the past actions and violations of licensees when deciding whether to revoke and/or reissue licenses. For instance, if a licensing consultant were to witness actual physical or sexual abuse being done to a child by a child care licensee, DHHS would be forced to reissue a license to that individual so long as he or she maintained an appropriate compliance score and promised that he or she no longer abused the children in his or her care. Similarly, if a licensee had a practice of leaving preschool-aged children to play in a pit inhabited by venomous snakes, under Petitioner's interpretation of N.C. Gen. Stat. § 150B-3(b), DHHS would be required to cease revocation proceedings if the licensee did away with the snake pit.
We hold that the statute simply grants the licensee an opportunity to be heard on the matters giving rise to a pending revocation. Petitioner was cited multiple times over a twelve-month period for safety-related violations, ranging from outdated certifications to exposed cleaning products. The internal review board gave Petitioner an opportunity to be heard, and to show that she was in compliance with DHHS licensing requirements. The board then found that Petitioner's rebuttal promising that she no longer intends to expose children to harmful chemicals or to falsify information to DHHS officials did not outweigh the harm done.
We conclude that the administrative law judge did not err by affirming the revocation of Petitioner's license. Further, the superior court appropriately employed the whole record test and did not err in affirming the administrative law judge's decision. We hold that the facts as presented by the entire record before us are sufficient to support a revocation of Petitioner's child care license, and thereby affirm.
AFFIRMED.
Judges BRYANT and DIETZ concur.