IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-122

Filed 19 December 2023

Mecklenburg County, No. 21 CVS 19462

ELITE HOME HEALTH CARE, INC., and ELITE TOO HOME HEALTH CARE, INC., Petitioners,

v.

N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE, DIVISION OF HEALTH BENEFITS, Respondents.

Appeal by petitioners from order entered 12 September 2022 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 October 2023.

*Ralph Bryant Law Firm, by Ralph T. Bryant, Jr., for petitioners-appellants.*

*Attorney General Joshua H. Stein, by Assistant Attorney General Adrian W. Dellinger, for the State.*

ZACHARY, Judge.

This appeal concerns the definition of a "clean claim" for the purposes of prepayment claims review of Medicaid providers in North Carolina, pursuant to N.C. Gen. Stat. § 108C-7 (2021). After conducting prepayment claims review, Respondent North Carolina Department of Health and Human Services ("DHHS") terminated Petitioners Elite Home Health Care, Inc., and Elite Too Home Health Care, Inc.,

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

(collectively, "Elite")[1] from participation in North Carolina's Medicaid program, due to Elite's "failure to successfully meet the accuracy requirements of prepayment review pursuant to [N.C. Gen. Stat.] § 108C-7." Elite appeals from the superior court's order affirming the final decision of the administrative law judge, which upheld the termination. After careful review, we affirm.

## I. Background

The dispositive issue in this appeal is the definition of a "clean claim" as used in N.C. Gen. Stat. § 108C-7. The relevant legal and procedural facts are undisputed.

## A. Medicaid and Prepayment Claims Review

"The Medicaid program was established by Congress in 1965 to provide federal assistance to states which chose to pay for some of the medical costs for the needy." *Correll v. Division of Soc. Servs.*, 332 N.C. 141, 143, 418 S.E.2d 232, 234 (1992). "Whether a state participates in the program is entirely optional. However, once an election is made to participate, the state must comply with the requirements of federal law." *Id.* (cleaned up). In essence, "Medicaid offers the States a bargain: Congress provides federal funds in exchange for the States' agreement to spend them

---

[1] We use "Elite" as a collective term, consistent with the record on appeal and the proceedings below. As the superior court explained: "Petitioners Elite Home Health Care, Inc.[,] and Elite Too Home Health Care, Inc[.,] are two separate entities. [However,] Tara Ellerbe is the CEO and sole shareholder of each. Each was enrolled as a [Medicaid] provider . . . . Each was subject to the same prepayment review at issue in this case and both were referred to in the hearing as if a single entity."

Similarly, we use "DHHS" as a collective term to include Respondents Division of Medical Assistance and Division of Health Benefits, both of which are divisions within the Department of Health and Human Services.

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

in accordance with congressionally imposed conditions." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 323, 191 L. Ed. 2d 471, 476 (2015).

Among the conditions imposed by Congress for a State's receipt of Medicaid funds is the requirement that "[a] State plan for medical assistance must . . . provide for procedures of prepayment and postpayment claims review[.]" 42 U.S.C. § 1396a(a)(37). Accordingly, N.C. Gen. Stat. § 108C-7 authorizes DHHS to conduct prepayment claims review "to ensure that claims presented by a provider for payment by [DHHS] meet the requirements of federal and State laws and regulations and medical necessity criteria[.]" N.C. Gen. Stat. § 108C-7(a).

Medicaid claims are generally paid upon receipt, and providers are subject to periodic audits thereafter. *See Charlotte-Mecklenburg Hosp. Auth. v. N.C. Dep't of Health & Hum. Servs.*, 201 N.C. App. 70, 74, 685 S.E.2d 562, 566 (2009), *disc. review denied*, 363 N.C. 854, 694 S.E.2d 201 (2010). Under certain circumstances, however, a Medicaid provider may receive notice that it has been placed on prepayment claims review. N.C. Gen. Stat. § 108C-7(b). The "[g]rounds for being placed on prepayment claims review" include:

> [R]eceipt by [DHHS] of credible allegations of fraud, identification of aberrant billing practices as a result of investigations, data analysis performed by [DHHS], the failure of the provider to timely respond to a request for documentation made by [DHHS] or one of its authorized representatives, or other grounds as defined by [DHHS] in rule.

*Id.* § 108C-7(a).

- 3 -

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Before placing a provider on prepayment claims review, DHHS must "notify the provider in writing of the decision and the process for submitting claims for prepayment claims review." *Id.* § 108C-7(b). Such notice must contain:

> (1) An explanation of [DHHS]'s decision to place the provider on prepayment claims review.
>
> (2) A description of the review process and claims processing times.
>
> (3) A description of the claims subject to prepayment claims review.
>
> (4) A specific list of all supporting documentation that the provider will need to submit to the prepayment review vendor for all claims that are subject to the prepayment claims review.
>
> (5) The process for submitting claims and supporting documentation.
>
> (6) The standard of evaluation used by [DHHS] to determine when a provider's claims will no longer be subject to prepayment claims review.

*Id.*

Once a provider is placed on prepayment claims review, that provider must achieve an acceptable level of "clean claims submitted" to be released from review or else risk sanction, which potentially includes termination from the Medicaid program:

> (d) [DHHS] shall process all clean claims submitted for prepayment review within 20 calendar days of receipt of the supporting documentation for each claim by the prepayment review vendor. To be considered by [DHHS], the documentation

ELITE HOME HEALTH CARE, INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

submitted must be complete, legible, and clearly identify the provider to which the documentation applies. If the provider failed to provide any of the specifically requested supporting documentation necessary to process a claim pursuant to this section, [DHHS] shall send to the provider written notification of the lacking or deficient documentation within 15 calendar days of the due date of requested supporting documentation. [DHHS] shall have an additional 20 days to process a claim upon receipt of the documentation.

(e) The provider shall remain subject to the prepayment claims review process until the provider achieves three consecutive months with a minimum seventy percent (70%) clean claims rate, provided that the number of claims submitted per month is no less than fifty percent (50%) of the provider's average monthly submission of Medicaid claims for the three-month period prior to the provider's placement on prepayment review. If a provider does not submit any claims following placement on prepayment review in any given month, then the claims accuracy rating shall be zero percent (0%) for each month in which no claims were submitted. If the provider does not meet the seventy percent (70%) clean claims rate minimum requirement for three consecutive months within six months of being placed on prepayment claims review, [DHHS] may implement sanctions, including termination of the applicable Medicaid Administrative Participation Agreement, or continuation of prepayment review. [DHHS] shall give adequate advance notice of any modification, suspension, or termination of the Medicaid Administrative Participation Agreement.

*Id.* § 108C-7(d)–(e).

## B. Procedural History

Elite was party to a Medicaid Participation Agreement, pursuant to which it

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

was required to abide by the policies developed by DHHS in Elite's provision of services. The Carolina Centers for Medical Excellence ("CCME") is a private corporation with which DHHS contracted to conduct prepayment claims reviews of particular Medicaid providers in North Carolina.

On 3 July 2019, at the direction of DHHS, CCME issued initial notices of prepayment claims review to Elite via certified mail. After a failed delivery attempt and after receiving no response to the notices left for Elite, CCME sent the notices to Elite by secured email on 22 July 2019. Between July 2019 and May 2020, CCME and Elite "made or attempted contact 263 times to discuss the prepayment review process, including, but not limited to, documentation requests, claims submissions, submission timelines, and denials." Elite submitted "roughly 60,000" claims while on prepayment claims review.

On 6 March 2020, DHHS sent to Elite, via certified mail, tentative notices of its decision to terminate Elite from participation in the North Carolina Medicaid program. The tentative notices stated that the decision was "a result of [Elite] not meeting minimum accuracy rate requirements of prepayment review[.]" On 20 April 2020, Elite filed a petition for a contested case hearing with the Office of Administrative Hearings.

The matter came on for hearing before the administrative law judge on 26 and 27 April 2021. On 3 November 2021, the administrative law judge entered a final decision upholding DHHS's decision.

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

In his final decision, the administrative law judge made the following pertinent findings of fact:

12. The Notices informed [Elite] that CCME would conduct prepayment review of claims submitted by [Elite]. The Notices described the prepayment review process and specifically explained that the provider must attain a claims submission accuracy rate of at least 70% for three consecutive calendar months. Further, the Notices informed [Elite] that if this rate was not achieved within six months of being placed on prepayment review, . . . [DHHS] could implement sanctions, including termination of the provider from providing services.

13. The Notices specifically stated: "However, the prepayment review contractor will review the documentation for services billed, including prior authorized services, to determine if the documentation is compliant with policy. An example is obtaining staff credentials to verify that a service has been rendered by an appropriately credentialed person, as required by Medicaid policy."

14. The Notices from CCME also set out a list of documents CCME would need to review and included a sample Audit Tool. An Audit Tool lists what documentation the reviewer needs to review for each claim.

. . . .

16. A claim submitted for a given date of service must be completely compliant with Clinical Coverage Policy as of that date of service.

17. This methodology has been approved by [DHHS] and is applied by CCME for all [personal care services] providers in the NC Medicaid Program that are on prepayment review.

ELITE HOME HEALTH CARE, INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

18. CCME is in nearly daily contact with providers who are subject to prepayment review and have questions about the process, about records requests, about specific denials, and other issues and concerns about the prepayment review process.

19. The number of claims submitted while [Elite was] on prepayment review was roughly 60,000.

20. Between July 2019 and May 2020, [Elite] and CCME made or attempted contact 263 times to discuss the prepayment review process, including, but not limited to, documentation requests, claims submissions, submission timelines, and denials.

21. [Elite was] fully informed and aware of the requirements for accuracy.

22. In calculating the monthly accuracy report, CCME reviews each claim detail line item.

23. Petitioner Elite Home Health Care, Inc. failed to send all required documentation 78 [percent] of the time while on prepayment review. Petitioner Elite Too Home Health Care, Inc. failed to send all required documentation 74 [percent] of the time while on prepayment review.

24. [Elite] failed to meet the minimum accuracy requirements.

25. [Elite] ha[s] not proven that all required documentation was provided at the time claims were submitted and was available for review by the prepayment review vendor, nor that claims should not have been denied at the time of the vendor's initial review.

26. The term "clean claim" is not defined in [N.C. Gen. Stat. §] 108C.

27. The term "clean claim" is defined in 42 C.F.R.

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

> § 447.45 as "one that can be processed without obtaining additional information from the provider of the service or from a third party."

> 28. The term "clean claim" is not defined by the North Carolina Administrative Code as it relates to Medicaid claims.

On 2 December 2021, Elite filed a petition for judicial review in the Mecklenburg County Superior Court. In its petition, Elite specifically challenged the administrative law judge's findings of fact 16, 21, 23–25, and 28. Elite also challenged the conclusions of law in which the administrative law judge applied the federal definition of "clean claim" from 42 C.F.R. § 447.45 rather than the definition of "clean claim" from 10A N.C. Admin. Code 27A.0302 (2022), which Elite argued applied instead.

On 23 August 2022, the matter came on for hearing in Mecklenburg County Superior Court. By order entered on 12 September 2022, the superior court affirmed the final decision of the administrative law judge. Elite timely filed notice of appeal.

## II. Discussion

On appeal, Elite argues that the superior court erred by affirming the final decision of the administrative law judge, and makes the same argument that it made below: that "DHHS was not authorized by statute to terminate [Elite's] participation in the Medicaid program" because it "failed to apply the correct definition of clean claim to determine the provider prepayment review accuracy rate[.]" We disagree.

## A. Standard of Review

ELITE HOME HEALTH CARE, INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

N.C. Gen. Stat. § 150B-51 sets forth the standard of review of decisions of an administrative agency, such as DHHS, and "governs both trial and appellate court review of administrative agency decisions." *Williford v. N.C. Dep't of Health & Hum. Servs.*, 250 N.C. App. 491, 493, 792 S.E.2d 843, 846 (2016) (citation omitted). Section 150B-51 provides, in pertinent part, that:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
>
> > (1) In violation of constitutional provisions;
> >
> > (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Affected by other error of law;
> >
> > (5) Unsupported by substantial evidence admissible under [N.C. Gen. Stat. §] 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
> >
> > (6) Arbitrary, capricious, or an abuse of discretion.
>
> (c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final

ELITE HOME HEALTH CARE, INC. V. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

> decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

N.C. Gen. Stat. § 150B-51(b)–(c).

Thus, pursuant to § 150B-51(b)–(c), our standard of review depends upon the error asserted by the petitioner. *Id.* When the petitioner's appeal raises an issue of law, such as the scope of the agency's statutory authority, "this Court considers the matter anew and freely substitutes its own judgment for the agency's." *Christian v. Dep't of Health & Hum. Servs.*, 258 N.C. App. 581, 584, 813 S.E.2d 470, 472 (cleaned up), *appeal dismissed*, 371 N.C. 451, 817 S.E.2d 575 (2018). However, when the petitioner's appeal raises arguments pursuant to § 150B-51(b)(5)–(6), we review using the whole record test. "Using the whole record standard of review, we examine the entire record to determine whether the agency decision was based on substantial evidence such that a reasonable mind may reach the same decision." *Id.* at 584–85, 813 S.E.2d at 472.

In the present case, Elite acknowledges that the dispositive facts are undisputed and "the definition of a clean claim is determinative in this matter." In that this issue presents a pure question of law, we apply a de novo standard of review to the legal issue raised in this appeal.

**B. Analysis**

The question presented is the definition of the term "clean claim," which is not

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

defined in the text of N.C. Gen. Stat. § 108C-7. However, the Centers for Medicare & Medicaid Services ("CMS") promulgated a federal regulation defining the term "clean claim" for the purposes of prepayment claims review pursuant to 42 U.S.C. § 1396a(a)(37). CMS defines a "clean claim" in the Code of Federal Regulations as "one that can be processed without obtaining additional information from the provider of the service or from a third party." 42 C.F.R. § 447.45(b) (2022). DHHS asserts that the definition in this federal regulation controls in this case.

On the other hand, Elite contends that a "clean claim" is "an electronic invoice for payment that contains all of the information that is required to be completed on that invoice." Elite derives this definition from the North Carolina Administrative Code, one section of which ("the Rule") defines a "clean claim" as "an itemized statement with standardized elements, completed in its entirety in a format as set forth in Rule .0303 of this Section." 10A N.C. Admin. Code 27A.0302(b).

Elite correctly notes that the Rule is "the only DHHS[-]promulgated rule in the administrative code" that defines the term "clean claim." Nonetheless, the Rule is plainly inapplicable to the case before us. The Rule is found in a section of the Administrative Code that is solely "applicable to local management entities (LMEs) and public and private providers who seek to provide services that are payable from funds administered by an LME." 10A N.C. Admin. Code 27A.0301. LMEs are "area mental health, developmental disabilities, and substance abuse authorit[ies]" that operate under the Mental Health, Developmental Disabilities, and Substance Abuse

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

Act of 1985. N.C. Gen. Stat. § 122C-3(1), (20b).

Elite is not an LME, nor has it ever contended that it "provide[s] services that are payable from funds administered by an LME." 10A N.C. Admin. Code 27A.0301. As Robyn Winters—a contract supervisor with CCME, the independent contractor that processes documents submitted for prepayment claims review—testified before the administrative law judge: "None of the claims that were submitted by Elite were submitted to or through any of the [LMEs] in North Carolina." Elite does not contest this fact. Rather than arguing that this case involves claims that fall within the scope of the Rule, Elite instead argues that the Rule reaches beyond its text to encompass "all agencies that [DHHS] allows to administer Medicaid funds." This argument is meritless, and disregards the plain text limiting the scope of the Rule, which simply does not apply in the context presented in the case at bar.

It is evident that the CMS definition controls: for the purposes of prepayment claims review, a clean claim is "one that can be processed without obtaining additional information from the provider of the service or from a third party." 42 C.F.R. § 447.45(b).

Significantly, Elite candidly admits in its reply brief that, in the event that we reject its definitional argument and agree with DHHS that the definition promulgated by CMS in 42 C.F.R. § 447.45 applies, "DHHS would have made a showing of less than perfect compliance in over 70% of the claims submitted." Consequently, there are no contested issues of fact to resolve; our answer to this

ELITE HOME HEALTH CARE, INC. v. N.C. DEP'T OF HEALTH & HUM. SERVS.

*Opinion of the Court*

determinative question of law controls. Elite's argument is overruled.

### III.    Conclusion

For the foregoing reasons, the superior court's order is affirmed.

AFFIRMED.

Chief Judge STROUD and Judge MURPHY concur.